UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RANDALL GRIFFIN, | Case No. 11-14876 |
| Plaintiff, | John Corbett O'Meara |
| v. | United States District Judge |
| MARY K. BERGHUIS, *et al.*, | Michael Hluchaniuk |
| Defendants, | United States Magistrate Judge |
| _____/ | |

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 9)**

**I.    PROCEDURAL HISTORY**

Plaintiff filed his complaint on November 4, 2011 alleging violations of his constitutional rights by defendants. (Dkt. 1). This matter was referred to the undersigned for all pretrial proceedings. (Dkt. 5). Defendants filed their motion for summary judgment on January 20, 2012. (Dkt. 9). Plaintiff filed a response on February 13, 2012. (Dkt. 14). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

## II.     FACTUAL BACKGROUND

According to plaintiff's complaint, he was elected to the Warden's Forum[1] at the Brooks Correctional Facility.  Plaintiff and the other member of the Forum sent a letter to the Regional Prison Administrator indicting that they feared retaliation for their participation in the Forum:

> A newly elected Warden Forum is taking office and many fear retaliation for redressing legitimate complaints, e.g., retaliatory transfers, etc. [sic]
>
> We are a very committed Forum and intent on diligently challenging issues of concern to the population, staying within the boundaries of PD-01-10-150. Our job is to represent the prisoner population regardless if Administrative Staff might want certain issues addressed.
>
> Collectively, we are asking that the situation be monitored closely. It is not up to MDOC Staff to conclude what they think is best for prisoner population, e.g., the current cable contract, improper ventilation in the housing units, food quality, etc.  We desire change and plan on achieving such through diligent and professional redress.
>
> No LRF Representative should be retaliated against.

(Dkt. 14, Pg ID 137).

---

[1] The Warden's Forum is an advisory group of prisoners to which plaintiff had been elected by the prisoners in his housing unit. The Warden's Forum advises the warden on prisoners' day to day concerns at their particular facility. *Davis v. Caruso*, 2006 WL 1313879* 1, n. 1 (W.D. Mich. 2006).

Plaintiff was then removed from the Warden's Forum and transferred to another correctional facility. According to Warden Berghuis, this action was taken based on plaintiff's behavior as a member of the Warden's Forum, which jeopardized the good order of the facility. (Dkt. 14, Pg ID 138). She indicated that the memo sent was inappropriate, demeaning to staff, and an attempt to organize a protest. *Id*. Plaintiff says he lost a high paying job as a result of the transfer, which was done in retaliation for his participation in the Warden's Forum.

Plaintiff also makes claims against prison officials at the Gus Harrison Correctional Facility, to which he was transferred. According to plaintiff, he was again elected to the Warden's Forum at this facility and was retaliated against for his participation. In addition, plaintiff says that defendants retaliated against him for giving a statement regarding the assault of another inmate by defendant Condon. According to plaintiff, several false misconduct tickets were written against him in retaliation for the exercise of his First Amendment rights.

### III.   ANALYSIS AND CONCLUSION

#### A.   Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of*

*Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).[2]

---

[2] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an

B. <u>Legal Standards - First Amendment Retaliation</u>

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Retaliation based on a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id*. at 386, 394. If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id*.; *Thaddeus-X*,

---

affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record. Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself. *Id*. ("The standard for granting summary judgment remains unchanged.").

175 F.3d at 399.  However, an adverse action does not need to actually deter a person from exercising constitutional rights; it only needs to be capable of doing so.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("The relevant question . . . is whether the defendant's adverse conduct was '*capable*' of deterring a person of ordinary firmness.'"); *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) ("[T]he adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted.").

With regard to the timing of the allegedly adverse actions, mere temporal proximity is insufficient to establish a retaliatory motive.  *See Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (while temporal proximity between inmate's grievances and decision to transfer him provided some circumstantial support for a causal connection, this evidence alone was not sufficient to meet inmate's burden showing that the filing of grievances was a substantial or motivating factor for his transfer).  Conclusory allegations, however, are insufficient to show that a defendant was motivated by the exercise of a plaintiff's First Amendment rights.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  And, bare allegations by the plaintiff of malice on the part of a defendant are not enough to establish retaliation claims.  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).  The plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Mount*

*Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  Where a plaintiff fails to produce evidence from which a jury could reasonably determine that transfer to administrative segregation, job loss, and disparate treatment were in retaliation for his alleged protected activities, summary judgment in favor of the defendant is proper.  *Scuba v. Wilkinson*, 2010 WL 99348 (S.D. Ohio 2010), citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000).

In order to succeed on a First Amendment retaliation claim, plaintiff must show that he engaged in protected conduct.  Here, plaintiff says that his participation in the Warden's Forum at both correctional institutions was protected conduct.  It is well-established, however, that participation in the Warden's Forum is not protected conduct.  *See e.g.*, *Moore v. Mich. Dep't of Corr.*, 2009 WL 2170369, *3 (W.D. Mich. 2009), citing *Cromer v. Dominguez*, 103 Fed.Appx. 570, 573 (6th Cir. 2004); *Davis v. Straub*, 2009 WL 4908433, *9 (W.D. Mich. 2009); *Reeves v. Chapman*, 2011 WL 2518843 (E.D. Mich. 2011) ("A prisoner is not engaged in protected First Amendment activity when appearing as a representative to a warden's forum to present issues on behalf of other inmates.").

Plaintiff also argues that his July 30, 2010 letter to the Regional Prison Administrator and his August 16, 2010 complaint to Legislative Ombudsman Keith Barber were protected conduct.  In his July 30, 2010 letter, plaintiff expressed concern that as a newly elected member of the Warden's Forum, he

might be retaliated against for attempting to redress legitimate complaints. (Dkt. 14, Pg ID 137). This letter was apparently copied to Patricia Caruso, Dennis Straub, Mary Berghuis, and the other forum members. *Id*. The court held in *Thaddeus-X* that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Id*. at 394. According to the Policy Directive governing the Warden's Forum:

> The role of prisoner housing unit representatives is to assist housing unit staff in identifying and resolving problems which exist in the unit. Housing unit representatives serve solely in an advisory capacity to the administration and shall in no way jeopardize the custody, security, or good order of the institution. A housing unit representative who abuses his/her position by creating a serious threat to the custody, security, or good order of the institution may be removed and/or permanently prohibited from serving as a housing unit representative as set forth in paragraph 1.

(Dkt. 14-1, Pg ID 151) (Policy Directive 04.01.150, ¶ B). Plaintiff claims that because he was not issued a misconduct ticket, the letter could not have violated the Policy Directive. However, there is no support for plaintiff's position in the case law. *See e.g.*, *Lockett v. Suardini*, 526 F.3d 866, 874 (2008) (Court found that plaintiff's behavior violated MDOC policy directive and was not protected conduct, despite the fact that no misconduct ticket had been written for the behavior at issue). Plaintiff does not offer evidence suggesting that the letter did

not violate the Policy Directive, other than his own denial. In contrast, defendants opinions regarding the potential disruptive nature of plaintiff's letter are entitled to some deference:

> As we said in *Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14, 101 S.Ct. 2392, 2400 n. 14, 69 L.Ed.2d 59 (1981), "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." In assessing the seriousness of a threat to institutional security prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners *inter se*, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on "purely subjective evaluations and on predictions of future behavior," *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981); indeed, the administrators must predict not just one inmate's future actions, as in parole, but those of an entire institution.

*Hewitt v. Helms*, 459 U.S. 460, 474 (1983). The undersigned is not inclined to second guess defendants' interpretation of plaintiff's letter as a threat to the good order of the prison and a violation of the Policy Directive, absent more compelling evidence than what plaintiff has offered here.

In his August 16, 2010 letter to Mr. Barber, he complained about the

constant problems the members of the Warden's Forum were subjected to at the Earnest C. Brooks Correctional Facility. (Dkt. 14-1, Pg ID 142). Assuming that the August 16, 2012 letter constituted protected conduct, plaintiff's transfer order was submitted on August 13, 2012, before the letter was written. (Dkt. 14-1, Pg ID 144). In addition, plaintiff does not offer any evidence that defendants were even aware of this letter.

    As to the July 30, 2010 letter, even assuming that it was protected conduct, none of the action taken in response (transfer and removal from the Warden's Forum) is adverse action. First, removal from the Warden's Forum is not "adverse action." *Davis*, at *9, citing *Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. And, while plaintiff also claims that his transfer to another correctional facility was retaliatory, the Sixth Circuit has repeatedly held that a prison transfer is generally not a sufficiently adverse action to deter a person of ordinary firmness from engaging in protected conduct. *Jewell v. Leroux*, 20 Fed.Appx. 375 (6th Cir. 2001) (A transfer to the general population of another prison is not considered sufficiently adverse.); *Geiger v. Prison Realty Trust, Inc.*, 13 Fed.Appx. 313 (6th Cir. 2001) (The prisoner failed to allege that his transfer to another institution prevented or deterred him from continuing to write grievances and file lawsuits.); *Friedman v. Corr. Corp. of Am.*, 11 Fed.Appx. 467 (6th Cir. 2001) (Transfer to another institution that was farther away from those who visited him and did not

offer the programs in which he previously participated was not an "adverse action" for purposes of a retaliation claim.); *Goddard v. Ky. Dep't of Corr.*, 2000 WL 191758 (6th Cir. 2000) (The transfer of an inmate to the general population of another prison is not considered sufficiently adverse.). Plaintiff alleges, however, that the transfer caused him to lose a lucrative job. In *Siggers-El v. Barlow*, the Sixth Circuit held that a transfer that causes an inmate to lose a job that pays for his attorney and causes him to have limited access to his attorney can be an adverse action because the consequences of that "transfer would deter a person of ordinary firmness from engaging in protected conduct." 412 F.3d at 701-02. However, plaintiff points to no authority suggesting that without such consequences, a transfer that merely results the loss of a job, without more, is an adverse action. Notably, it is evident from the record that plaintiff obtained a job at the facility to which he was transferred.

Plaintiff also argues that by giving a witness statement in support of another prisoner's grievance, he engaged in protected conduct. However a prisoner has no First Amendment right to represent other inmates in presenting their grievances absent a showing that "'the inmate[ ]s receiving assistance would otherwise be unable to pursue legal remedies.'" *Cromer*, 103 Fed.Appx. at 573, quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Where a plaintiff fails to allege or show that the inmate he was assisting would not have been able to pursue

his legal remedies without the plaintiff's assistance, the First Amendment retaliation claims fails. *Reeves*, at *2. No such showing has been made here.

Even if plaintiff could establish that he engaged in protected conduct by making a witness statement in support of another inmate's grievance or participating in the investigation, he has identified no adverse action taken against him. Removal from the Warden's Forum is not considered "adverse action." *Davis*, at *9, citing *Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. Plaintiff also claims that defendant Downard wrote him a false misconduct for failing to report to work on time and completing his work assignment in retaliation for his participation in the investigation into the assault of a fellow prisoner. However, plaintiff was found guilty of this misconduct, thus foreclosing any retaliation claim. *Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005) ("A finding of guilt on a misconduct charge based on some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.").

Finally, plaintiff says that defendant McMurtrie also wrote a false misconduct in retaliation for his participation in the investigation. The ticket was for being out of place because plaintiff did not report to work after the first misconduct ticket was issued. However, as it turns out, plaintiff was "laid-in" as a result of the first ticket and was not required to report to work that day. According to plaintiff, defendant McMurtrie is the person who told him he was laid-in, so the

ticket was obviously retaliatory. According to defendant McMurtrie, he was unaware that plaintiff was "laid-in" and the ticket was dismissed the following day. Plaintiff, however, offers no evidence connecting his participation in the investigation to McMurtrie's motivation to issue the misconduct ticket, which is his burden. *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (A prisoner is required to come forward with evidence on "whether the defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct."). Plaintiff alleges that he sent a sworn affidavit to the Legislative Ombudsman concerning the assault, but he does not include a copy of the affidavit or any proof that it was sent. (Dkt. 14, Pg ID 98). On March 2, 2011, plaintiff's says he had a conversation with defendant Condon in which Condon said that "his statement to the Ombudsman will not change a thing, and would come back to bite plaintiff in the ass." (Dkt. 14, Pg ID 99). Assuming that Condon was purportedly referring to the affidavit regarding the investigation into the assault, and not some other correspondence by plaintiff to the Ombudsman, the supporting affidavits (by two other inmates) offered by plaintiff contain no reference to the investigation. Rather, the affidavits describe overhearing a conversation on March 2, 2011 (just after plaintiff's conversation with Condon, apparently) among Condon, McMurtrie and Downard describing how they were tired of plaintiff "trying to change things" and they knew how to

get him removed from the Warden's Forum - by writing false misconduct tickets. (Dkt. 14-1, Pg ID 146-147). Despite offering affidavits from two eyewitnesses to the alleged conspiratorial conversation among three defendants, there is no evidence that any of these three defendants were motivated to retaliate against plaintiff based on his participation in an investigation.[3]

For these reasons, the undersigned concludes that summary judgment in defendants' favor is appropriate and plaintiff has not created any genuine issues of material fact sufficient to warrant denying defendants' motion.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment should be **GRANTED** and plaintiff's complaint **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

---

[3] Plaintiff's claim about retaliation based on his participation in the investigation is recounted in the March 3, 2011 letter to Jessica Zimbalman (the investigator), including the claim that another "prisoner over heard [sic] R.U.M. Condon instructed [sic] C/O Downard to write me a false misconduct due to my being an affiant against him in the Bryant case." (Dkt. 14-1, Pg ID 148). However, no such claim is made in the affidavits submitted by plaintiff. Notably, this letter was written after both misconduct tickets were issued, so the letter itself does not appear to be the basis of any retaliation claim.

72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 3, 2012                     s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on August 3, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kevin R. Himebaugh,</u> and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Randall Griffin, ID# 198968, IONIA MAXIMUM CORRECTIONAL FACILITY, 1576 W. Bluewater Highway, Ionia, MI 48846</u>.

                                                                       s/Tammy Hallwood
                                                                         Case Manager
                                                                         (810) 341-7887
                                                                         tammy_hallwood@mied.uscourts.gov