UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDLE GRIFFIN

Plaintiff,

vs.

RUM LOUIS CONDON, RUO JOSEPH DOWNARD, and RUO GARY MCMURTRIE
In Their Individual Capacity,

Defendants.

Case No. 5:11-cv-14876

Hon. John Corbett O'Meara

Mag. Michael J. Hluchaniuk

---

Francis Ortiz (P31911)
Brandon Hubbard (P71085)
Wade Fink (P78851)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 400
Detroit, Michigan 48226
(313) 223-3500
fortiz@dickinsonwright.com
bhubbard@dickinsonwright.com
wfink@dickinsonwright.com
*Attorneys for Plaintiff*

Clifton B. Schneider (P70582)
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-7021
*Attorneys for Defendants*

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Randle Griffin ("Plaintiff"), by and through his attorneys, Dickinson Wright PLLC, and pursuant to FED. R. CIV. P. 15(a)(1)(B), hereby submits his Second Amended Complaint and Jury Demand. This is a civil rights

action being brought pursuant to the provisions of Title 42 U.S.C. §1983 and the First Amendment to the United States Constitution. Plaintiff alleges Constitutional violations against Defendants Residential Unit Manager ("RUM") Louis Condon, Residential Unit Officer ("RUO") Joseph Downard, and RUO Gary McMurtrie (collectively, the "Defendants"). For his Second Amended Complaint, Plaintiff states as follows:

## THE PARTIES

1. Plaintiff was originally a prisoner at the Brooks Correctional Facility, located at 2500 S. Sheridan Drive, Muskegon Heights, Michigan 49444. On or about September 23, 2010, Plaintiff was transferred to Gus Harrison Correctional Facility, located at 2727 E. Beecher Street, Adrian, Michigan 49221, where the conduct at issue in this Complaint occurred. On or about April 13, 2011, Plaintiff was transferred to the Lakeland Correctional Facility, located at 141 First Street, Coldwater, Michigan 49036. Plaintiff currently resides at the Ionia Correctional Facility, located at 1576 West Bluewater Highway, Ionia, Michigan, 48846.

2. Defendant RUM Condon was, at all times relevant, the Residential Unit Manager at the Gus Harrison Correctional Facility, located at 2727 E. Beecher Street, Adrian, Michigan, 49221. Upon information and belief, Defendant RUM

Condon is a resident of the State of Michigan. Defendant RUM Condon is being sued in his individual capacity.

3. Defendant RUO Downard was, at all times relevant, a Residential Unit Officer at the Gus Harrison Correctional Facility, located at 2727 E. Beecher Street, Adrian, Michigan, 49221. Upon information and belief, Defendant RUO Downard is a resident of the State of Michigan. Defendant RUO Downard is being sued in his individual capacity.

4. Defendant RUO McMurtrie was, at all times relevant, a Residential Unit Officer at the Gus Harrison Correctional Facility, located at 2727 E. Beecher Street, Adrian, Michigan, 49221. Upon information and belief, Defendant RUO McMurtrie is a resident of the State of Michigan. Defendant RUO McMurtrie is being sued in his individual capacity.

## JURISDICTION

5. This Court has Jurisdiction over this case pursuant to 42 U.S.C. §§1331(1), 1343, and 1983. This Court is vested with subject matter and personal jurisdiction.

6. Venue is proper for the Eastern District of Michigan under 28 U.S.C. §1391(b).

## FACTUAL ALLEGATIONS

7. On or about September 23, 2010, Plaintiff was transferred from Brooks Correctional Facility to the Gus Harrison Correctional Facility in Adrian, Michigan.

8. On or about January 23, 2011, Plaintiff witnessed prisoner Bryant MDOC No. 244149 ("Bryant") being physically assaulted by RUM Condon.

9. On or about February 5, 2011, Plaintiff was elected to the Warden's Forum, an advisory committee that addresses the day-to-day concerns of the prison population.

10. On or about February 26, 2011, Plaintiff submitted a sworn affidavit to the Legislative Ombudsman's Office regarding what he witnessed in connection with RUM Condon's assault of Bryant.

11. Shortly thereafter, Plaintiff became a witness in an ongoing investigation being conducted by the Legislative Ombudsman Correctional Division against RUM Condon. In late February or early March, investigator Jessica Zimbelman from the Ombudsman's Office visited the Gus Harrison Facility to interview Bryant and Plaintiff regarding the assault. During the investigator's interview of Plaintiff, Plaintiff recounted the events he witnessed in connection with the assault of Bryant.

12. On or about March 2, 2011, Plaintiff went into RUM Condon's office to address housing unit concerns on behalf of the general prison population in his capacity as the unit representative of the Warden's Forum in compliance with Michigan Department of Corrections ("MDOC") procedure.

13. Plaintiff specifically asked RUM Condon why he was locking down the unit ten minutes early to pass out monthly account statements, instead of passing them out during the 4 o'clock count, as RUM Condon had previously agreed with the Warden's Forum representatives.

14. Sometime thereafter, Plaintiff was summoned back to RUM Condon's office, whereby RUM Condon stated to Plaintiff that his statements to the Ombudsman's investigator would not change a thing, and would only come back to "bite [Plaintiff] in the ass." Plaintiff did not respond and walked away.

15. On or about March 2, 2011, Defendants agreed to retaliate against Plaintiff by writing false misconduct tickets against Plaintiff.

16. Defendants were overheard by witnesses agreeing to write false misconduct tickets against Plaintiff.

17. Defendants were aware that the issuance of misconduct tickets against Plaintiff would result in many negative outcomes for Plaintiff, including, but not

limited to, loss of privileges, termination of Plaintiff's employment and Plaintiff's removal from the Warden's Forum.

18. Defendants agreed to fabricate false misconducts against Plaintiff because of his participation in the on-going investigation of RUM Condon's assault of Bryant.

19. On or about March 2, 2011, RUO Downard issued a false "Out of Place" misconduct ticket against Plaintiff for failing to report to work. The ticket was unwarranted, as Plaintiff went directly to work after attending a Warden's Forum meeting in accordance with MDOC policies.

20. On or about March 3, 2011, Sgt. Howard reviewed the Out of Place ticket issued against Plaintiff by RUO Downard the previous day.

21. On or about March 3, 2011, RUO McMurtrie informed Plaintiff that he was "laid in" (a term meaning Plaintiff was confined to his cell) and that Plaintiff was not to report to work because he no longer had a job due to the pending misconduct ticket issued by RUO Downard.

22. Sometime thereafter, on March 3, 2011, RUO McMurtrie wrote a false "Out of Place" ticket against Plaintiff for failing to report to work.

23. On or about March 3, 2011 RUO Downard came to Plaintiff's area of control and threatened him with physical harm, yelling, among other things: "IF YOU DON'T LIKE THE TICKET THAT WAS WRITTEN ON YOU THEN DO SOMETHING AND WE WILL BEAT YOUR ASS AND KEEP YOU IN THE HOLE UNTIL YOU HEAL UP AND MORE FALSE TICKETS WILL BE WRITTEN ON YOU!" RUO Downard also called Plaintiff a "rat" before walking away.

24. RUO Downard called Plaintiff a "rat" loud enough for other inmates to hear.

25. RUO Downard's threats of physical harm to Plaintiff's person left Plaintiff feeling fearful for his safety, humiliated, and degraded.

26. Due to being labeled a "rat" by RUO Downard, Plaintiff was in danger of being harmed by other prisoners.

27. On or about March 3, 2011, Plaintiff wrote a complaint to Legislative Ombudsman Correctional Division investigator Jessica Zimbelman informing her of the threats made by RUO Downard.

28. Plaintiff's family also filed complaints against RUO Downard with the Michigan Civil Service Commission and the Director of Michigan Department of Corrections. No response was ever issued.

29. On or about March 4, 2011, at approximately 2:05 P.M., Plaintiff was called to the control center for ticket review. While at the control center, Sgt. Howard began reviewing the Out of Place ticket written by RUO McMurtrie against Plaintiff on March 3, 2011.

30. During the review of the ticket referenced in Paragraph 29, Plaintiff pointed out to Sgt. Howard that it was impossible for Plaintiff to have been Out of Place from his work assignment on March 3, 2011 because RUO McMurtrie personally informed Plaintiff that he was laid-in from his work assignment.

31. Sgt. Howard called Housing Unit 2 to verify Plaintiff's claim. After verifying Plaintiff's claim with RUO McMurtrie, Sgt. Howard dismissed RUO McMurtrie's false Out of Place misconduct ticket.

32. On or about March 4, 2011, Plaintiff hand delivered a formal complaint to ARUS Olin concerning the harassment and the false misconducts issued against Plaintiff. Plaintiff never received a response to his complaint.

33. On or about March 4, 2011, Plaintiff filed a formal complaint to Warden Paul Klee concerning RUO Downard's threats, RUO Downard's and McMurtrie's harassment, and the false misconducts issued against Plaintiff. Plaintiff never received any response to his complaint.

34. On or about March 7, 2011, Plaintiff filed a Step I grievance, Grievance Identifier No. ARF-110/300/898/28C, against RUM Condon, RUO Downard and RUO McMurtrie for retaliating against Plaintiff for being a witness in the ongoing investigation against RUM Condon.

35. On or about March 8, 2011, Respondent Hermy issued a Step I response indicating that Plaintiff's grievance contained and addressed multiple issues, which was in violation of MDOC policy directives.

36. On or about March 9, 2011, Hearing Officer Evers upheld the Class II misconduct ticket issued by RUO Downard.

37. On or about March 10, 2011, Plaintiff filed a Step II grievance appeal.

38. On or about March 10, 2011, Plaintiff was called to the control center to see Assistant Deputy Warden Chapman. When Plaintiff arrived to the control center, Assistant Deputy Warden Chapman stated that, after reviewing Plaintiff's

file, Plaintiff was immediately removed from the Warden's Forum and would not be eligible to run again until August 17, 2011.

39. On or about March 14, 2011, Deputy Warden Lee McRoberts issued a Step II response to Plaintiff's grievance, stating that the grievance contained numerous unrelated issues in violation of MDOC policy directives.

40. On or about March 17, 2011, Plaintiff filed a timely Step III grievance appeal to the MDOC Director's Office. Plaintiff's grievance appeal was denied on April 11, 2011.

41. On or about March 28, 2011, Plaintiff appealed Hearing Officer Evers' decision regarding the Class II misconduct ticket issued by RUO Downard. Plaintiff's appeal was denied.

42. Plaintiff exhausted his administrative remedies.

43. As a result of Defendants' wrongful actions described above, Plaintiff's First Amendment rights were violated.

44. As a result of Defendants' conduct, Plaintiff was terminated from his porter job at the Gus Harrison Facility.

45. Plaintiff's wrongful termination resulted in lost wages for the work he had already done, but was not compensated for, and for the period of time he was involuntarily unemployed.

46. Plaintiff's job entailed working five (5) days a week, 90 minutes per session. During his work periods, Plaintiff was not confined to his cell and had the ability to walk around the housing unit and recreation room. Plaintiff's termination resulted in a tangible loss of liberty and a tangible harm to his quality of life.

47. As a result of Defendants' conduct, Plaintiff lost his position on the Warden's Forum.

48. The Warden's Forum met approximately four (4) times per month. However, being a Warden's Forum representative was a full time responsibility, as it required representatives to field complaints and problems from fellow inmates in order to determine how best to address them within the Michigan Department of Corrections policy.

49. Plaintiff possessed a leadership role on the Warden's Forum. Plaintiff took great pride in his position. Plaintiff felt that his position gave him dignity and purpose in an environment where dignity and purpose were difficult to come by.

50. In his leadership position on the Warden's Forum, Plaintiff took it upon himself to assist and mentor younger inmates. Plaintiff endeavored to educate himself to be in a position to assist the prison population.

51. As a result of Defendants' conduct as described in this Complaint, Plaintiff lost privileges and quality of life in his prison living conditions, and also lost some of the limited liberties enjoyed by prisoners in that Plaintiff was deprived of liberties that included, but were not limited to, his ability to work and his ability to participate in the Warden's Forum.

52. As a result of Defendants' wrongful actions, Plaintiff has suffered severe mental and emotional distress because he is fearful of being harmed and/or retaliated against by the Defendants. Plaintiff also feels degraded and humiliated as a result of the wrongful conduct committed by the Defendants.

53. As a result of Defendants' wrongful actions, Plaintiff was placed in physical danger from other inmates and guards.

## COUNT I

## FIRST AMENDMENT RETALIATION

54. Plaintiff realleges and incorporates all previous paragraphs.

55. The First Amendment to the United States Constitution provides the "Congress shall make no law . . . abridging the freedom of speech, or of the press;

or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. Amend. I.

56. Plaintiff engaged in protected conduct under the First Amendment when he acted as a material witness in the on-going investigation of RUM Condon's assault of Prisoner Bryant and aided the Michigan Legislative Ombudsman in addressing an incident of inmate abuse at Gus Harrison Correctional Facility.

57. The conspiracy between RUO Downard, RUO McMurtrie, and RUM Condon to write false tickets, knowing such tickets would result in negative consequences for Plaintiff, was an adverse action.

58. The misconduct ticket issued by RUO Downard was an adverse action.

59. The misconduct ticket issued by RUO McMurtie was an adverse action.

60. RUO Downard's threat of physical harm and disciplinary action against Plaintiff was an adverse action.

61. RUM Condon's threat of retaliation, physical harm, and/or disciplinary action against Plaintiff was an adverse action.

62. At all relevant times, Defendants' acted under the color of state law, as they were acting in their official capacity as state prison personnel.

63. Defendants' actions would deter a person of ordinary firmness from engaging in the protected conduct.

64. Defendants RUM Condon's, RUO Downard's, and RUO McMurtrie's adverse actions were directly motivated by their desire to deter and punish Plaintiff for acting as a witness in an ongoing investigation being conducted by the Ombudsman against RUM Condon.

65. Defendant RUM Condon, RUO Downard, and RUO McMurtrie violated Plaintiff's First Amendment rights by retaliating against Plaintiff for engaging in the protected conduct.

66. Plaintiff is entitled to presumed general damages for the natural and necessary harm that resulted from Defendants' violation of Plaintiff's First Amendment rights as described in this Complaint.

67. Plaintiff suffered a number of harms and is entitled to compensatory damages.

68. Plaintiff is entitled to the lost wages that resulted from his wrongful termination based on Defendants' violation of Plaintiff's First Amendment rights as described in this Complaint.

69. In the alternative, Plaintiff is entitled to nominal damages resulting from Defendants' violation of Plaintiff's First Amendment rights as described in this Complaint absent an award of compensatory damages.

70. Plaintiff is entitled to punitive damages against the Defendants for their willful, malicious, and intentional conduct described in this Complaint.

**COUNT II**

**CONSPIRACY TO VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS**

71. Plaintiff realleges and incorporates all previous paragraphs.

72. The Defendants acted jointly, in concert, and shared the same conspiratorial objective to retaliate against Plaintiff for his cooperation with the Ombudsman's Office and were directly motivated by their desire to deter and punish Plaintiff.

73. The Defendants were overheard by witnesses agreeing to write false misconduct tickets against the Plaintiff, knowing that it would result in negative consequences.

74. The misconduct ticket issued by RUO Downard was an act in furtherance of the conspiratorial objective.

75. The misconduct ticket issued by RUO McMurtie was an act in furtherance of the conspiratorial objective.

76. RUO Downard's threat of physical harm and disciplinary action against Plaintiff was an act in furtherance of the conspiratorial objective.

77. RUM Condon's threat of retaliation, physical harm, and/or disciplinary action against Plaintiff was an act in furtherance of the conspiratorial objective.

78. At all relevant times, Defendants' acted under the color of state law, as they were acting in their official capacity as state prison personnel.

79. Defendants' actions would deter a person of ordinary firmness from engaging in the protected conduct.

80. Defendant RUM Condon, RUO Downard, and RUO McMurtrie violated Plaintiff's First Amendment rights by retaliating against Plaintiff for engaging in the protected conduct.

81. Plaintiff is entitled to presumed general damages for the natural and necessary harm that resulted from Defendants' conspiracy.

82. Plaintiff suffered a number of harms as a result of the Defendants' conspiracy and Plaintiff entitled to compensatory damages.

83. Plaintiff is entitled to the lost wages that resulted from his wrongful termination based on Defendants' conspiracy.

84. In the alternative, Plaintiff is entitled to nominal damages resulting from Defendants' conspiracy absent an award of compensatory damages.

85. Plaintiff is entitled to punitive damages against the Defendants for their willful, malicious, and intentional conduct described in this Complaint.

## RELIEF REQUESTED

WHEREFORE, for the reasons stated, this Court should:

A. Declare that Plaintiff's Constitutional rights were violated by the actions of Defendant RUM Condon.

B. Declare that Plaintiff's Constitutional rights were violated by the actions of Defendant RUO Downard.

C. Declare that Plaintiff's Constitutional rights were violated by the actions of Defendant RUO McMurtrie.

D. Award compensatory damages jointly and/or severally against RUM Condon, RUO Downard, and RUO McMurtrie.

E. In the alternative to compensatory damages, award nominal damages jointly and/or severally against RUM Condon, RUO Downard, and RUO McMurtrie.

F. Award punitive damages jointly and/or severally against RUM Condon, RUO Downard, and RUO McMurtrie.

G. Award Plaintiff reasonable attorneys' fees and costs.

H. Award any other relief that this court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Wade G. Fink
Wade G. Fink (P78751)
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223 – 3500
wfink@dickinsonwright.com

Dated: September 15, 2015

**CERTIFICATE OF SERVICE FOR E-FILING**

I hereby certify that on September 15, 2015, I caused to have electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

DICKINSON WRIGHT PLLC

By: /s/ Wade G. Fink ______
Wade G. Fink (P78751)
*Attorneys for Plaintiff*
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223 – 3500
wfink@dickinsonwright.com