UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL GRIFFIN,                                    Case No. 11-14876

                 Plaintiff,                         John Corbett O'Meara
v.                                                  United States District Judge

MARY K. BERGHUIS, *et al.*,                         Michael Hluchaniuk
                                                    United States Magistrate Judge
                 Defendants,
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 75)**

## I.      PROCEDURAL HISTORY

Defendants in this matter previously filed a motion for summary judgment in January 2012.  (Dkt. 9).  The undersigned recommended that this motion be granted in its entirety.  (Dkt. 22).  Judge O'Meara adopted this recommendation over plaintiff's objections.  (Dkt. 27).  Plaintiff appealed to the Sixth Circuit.  (Dkt. 29).  The Court of Appeals reversed only as to the conclusions regarding plaintiff's retaliation claim against defendants McMurtie, Condon, and Downard.  (Dkt. 35).

The three remaining defendants have now filed a second motion for summary judgment, after discovery and by the deadline set forth in the Case Management Order.  (Dkt. 75).  Plaintiff filed a response on October 29, 2015.

1

(Dkt. 78). Defendants filed their reply on November 16, 2015. (Dkt. 80). The parties filed their joint statement of resolved and unresolved issues on November 23, 2015. (Dkt. 83). The second amended complaint was filed long after this matter was remanded by the Sixth Circuit. (Dkt. 74). On December 1, 2015, defendants filed their answer and affirmative defenses to the second amended complaint. (Dkt. 84). Pursuant to notice, the Court held a hearing on the Motion for Summary Judgment on December 9, 2015. (Dkt. 77). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **DENIED**.

## II.    FACTUAL BACKGROUND

Plaintiff alleges that defendants Louis Condon, Joseph Downard, and Gary McMurtrie retaliated against him due to his participation in an on-site investigation conducted by the office of the Michigan Legislative Corrections Ombudsman (Ombudsman's office) at the Gus Harrison Correctional Facility. In connection with the investigation, plaintiff shared what he witnessed of defendant Condon's assault of inmate Jeffery Bryant (Bryant assault) with the Ombudsman's office. Frustrated by plaintiff's participation in the investigation, plaintiff alleges that defendants retaliated against plaintiff by threatening plaintiff and writing false misconduct tickets against him. According to plaintiff, defendants' retaliation was

2

unlawful because it was in direct retaliation to plaintiff's constitutionally protected conduct (participation in the investigation).

As noted above, this matter was previously before the Sixth Circuit.  In the Sixth Circuit's decision, it noted that "defendant officers [Condon, Downard, and McMurtrie] concede that Griffin's participation in the ombudsman's investigation of Condon was protected conduct."  (Dkt. 35, Pg 16 of 21).  The Sixth Circuit also noted that these defendants "concede that the false misconduct charge that McMurtrie leveled at Griffin is an adverse action."  *Id*.  The Sixth Circuit concluded that the parties' only dispute was regarding causation, which centers on the defendant's motive.  In the absence of direct evidence, a close "temporal proximity between protected conduct and retaliatory actions ... creat[es] an interference of retaliatory motive."  *Id*. quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012).

On appeal, as to these three defendants, they argued, in pertinent part, as follows:

> McMurtrie established that he would have written the ticket regardless of Griffin's protected conduct. "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399. McMurtrie did not simply deny retaliation. Rather, McMurtrie explained that he "wrote the ticket because Griffin did not show up for his porter detail as he was supposed to." (R. 9-7, Affidavit of Gary

McMurtrie, ¶ 3, Pg ID #78). McMurtrie was unaware at
the time that Griffin had been "laid-in" based on the
previous day's ticket. The ticket written by McMurtrie
was quickly dismissed once this error was discovered. *Id*.
Accordingly, McMurtrie met his burden of showing that
he would have written the ticket regardless of Griffin's
protected conduct. The district court's decision to grant
summary judgment in favor of McMurtrie was correct.
The claim against Condon and Downard is even weaker.
It was McMurtrie who decided to write the ticket (for
permissible reasons).  Again, when analyzing causation,
"the subjective motivation of the decisionmaker is at
issue." Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir.
2001). There is insufficient evidence showing that
Condon and Downard had any role in the decision to
write the ticket. Accordingly, the district court's decision
to grant summary judgment in favor of Condon and
Downard was correct.

* * *

Later, at a different facility, McMurtrie wrote an out-of-
place ticket based on his honest belief that Griffin was
not where he was supposed to be. And there is no
evidence that Condon or Downard took any actions that
were objectively unreasonable in light of clearly established law.

(Sixth Circuit Court of Appeals Case No. 12-2363, Dkt. 48).  The Sixth Circuit

concluded, however, that Griffin was due an inference of retaliatory motive:

If Griffin's evidence is to be believed, McMurtrie
knowingly filed a false misconduct charge against him
the day after agreeing with his fellow officers to file false
charges against Griffin in retaliation for his efforts to
"change" institutional practices. One of those
officers—Condon—had previously warned Griffin that
he would suffer for his attempt to "change" things by
testifying in the investigation. This confluence of

4

circumstances suggests that the false charge was filed against Griffin "at least in part" because of his protected conduct. *King*, 680 F.3d at 694.

Griffin's evidence, to be sure, does not all point the same direction. There is some suggestion, in fact, that the officers were partially motivated by Griffin's activities as a member of the Warden's Forum, rather than by his participation in the ombudsman's investigation. Still, the record evidence is that the conspiring officers were "tired of Griffin trying to change things."  Particularly given the close temporal link and Condon's warning to Griffin that his testimony in the ombudsman's investigation would "not change a thing," the evidence supports a reasonable inference that the officers were motivated to file false misconduct charges against Griffin "at least in part" by his participation in the ombudsman's investigation, even if his activity on the Forum also contributed to their exasperation. *See Shreve*, 743 F.3d at 132.  And because "a person who sets in motion an adverse action can be liable for retaliation for the reasonably foreseeable consequences of his actions," Griffin's claims against each of the conspiring officers survive summary judgment.  *King*, 680 F.3d at 695.

The defendant officers resist this conclusion. They are correct to assert that they are entitled to summary judgment if they can prove "by a preponderance of the evidence that [McMurtrie] would have taken the same action absent the protected conduct." *King*, 680 F.3d at 709.  But McMurtrie claims that the misconduct charge that he filed against Griffin was only mistakenly erroneous, not intentionally false. In this respect, McMurtrie is fighting the facts: he claims that he did not tell Griffin not to report to work on the day in question, while Griffin says that he did. The officers cannot win summary judgment by arguing that their evidence is more believable than Griffin's.  *Anderson*, 477 U.S. at

255.

> Finally, the defendant officers assert that they are entitled to qualified immunity. Griffin claims that they waived such an argument by failing to make it below, but it makes no difference, because the officers are in any event incorrect. "It seems to us elementary that a prisoner retains a First Amendment right to respond to questions posed to him by a prison investigator." *Cornell v. Woods*, 69 F.3d 1383, 1390 (8th Cir. 1995). It was similarly clear at the time of the events here that a false misconduct charge was an adverse action. *See*, *e.g.*, *Thomas*, 481 F.3d at 441. It follows that, if Griffin's story is believed, each of the defendant officers should have known better. *al-Kidd*, 131 S. Ct. at 2083. Summary judgment was improperly entered on Griffin's claims against them, and the district court's judgment in this respect is reversed.

(Dkt. 35).

According to defendants, plaintiff amended his complaint to add a conspiracy claim so that defendants Condon and Downard can be held liable for the ticket as well. (Dkt. 74). In January 2011, a non-party prisoner alleged that he had been assaulted by defendant Condon. (Dkt. 1, ¶¶ 30-32). On February 9, 2011, an investigator from the ombudsman office was interviewing a prisoner; the plaintiff "stopped in during the interview." (Dkt. 75, Ex. A (filed under seal), Legislative Corrections Ombudsman Case Information).

On March 2, 2011, Condon wrote a class-II out-of-place ticket on the plaintiff. (Dkt. 75, Ex. B, Class-II ticket). Sergeant Howard reviewed the ticket with the plaintiff at 2:05 on March 3; plaintiff knew he was laid-in at that point.

6

(Dkt. 75, Ex. C, Deposition of Plaintiff, p. 42, lines 15-23). Plaintiff was found guilty on March 15, 2011. (Dkt. 75, Ex. B). Plaintiff claims that McMurtrie wrote a false class II out-of-place ticket against him on March 3, 2011, for failing to report to work; this was allegedly in retaliation for his participation on the warden's forum and his participation in an ombudsman investigation. (Dkt. 1, ¶¶ 30-50). Plaintiff claims that he tried to report for work, but McMurtrie told him he was laid in and sent him to his cell; McMurtrie then wrote the out-of-place ticket for failing to report to work. (Dkt. 75, Ex. C, pp. 41-44).

According to defendants, the March 3, 2011 ticket does not exist anymore because it was never heard. The ticket was dismissed on March 4 when it was reviewed by Sergeant Howard prior to setting a hearing date. *Id*. at p. 46, lines 17-25; p. 47, lines 1-17. During the ticket review, Howard called McMurtrie, then dismissed the ticket. *Id*. The plaintiff did not hear the conversation between them. *Id*. McMurtrie told Howard to rip up the ticket. (Dkt. 75, Ex. D, Deposition of McMurtrie, p. 86, lines 14-25). Plaintiff filed one grievance against these defendants. (Dkt. 75, Ex. C, p. 47, lines 18-24). The grievance was rejected as violating prison grievance policy. (Dkt. 75, Ex. E, Grievance ARF-11-03-898).

7

## III.   ANALYSIS AND CONCLUSIONS

A.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S.574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the nonmoving party.  *Anderson*, 477 U.S. at 248, 251.

B.    Qualified Immunity/Retaliation

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendant bears the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show

that the defendant is not entitled to qualified immunity").

The Supreme Court had established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

The Supreme Court revisited its decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors, including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. *Id.* In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether

10

plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244-45. "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'" *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009), quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009). "Where ... the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability, and thus summary judgment should not be granted." *Mitchell v. Cnty. of Washtenaw*, 2009 WL 909581, at *4 (E.D. Mich. 2009), quoting *Griffith v. Coburn*, 473 F.3d 650, 656-57 (6th Cir. 2007) (internal quotation marks and citation omitted).

According to defendants, they are entitled to qualified immunity because plaintiff was not engaged in protected conduct when he "dropped in" on an interview between an ombudsman investigator and another prisoner. In addition, they also claim that they are entitled to qualified immunity because plaintiff did not face any adverse action as the minor-misconduct ticket written by McMurtrie was dismissed on review the next day prior to even the scheduling of a hearing.

Thus, defendants maintain that, under the clearly established law, the plaintiff cannot meet those two elements of a retaliation claim, and the defendants are entitled to qualified immunity. The parties also argue about whether this motion is barred by the law-of-the case doctrine because the Sixth Circuit already determined that plaintiff's claims were not barred by qualified immunity. There are cases permitting defendants in civil rights cases to move twice on the issue of immunity. Once, before discovery (usually this is postured as a motion to dismiss, not a motion for summary judgment) and secondly, after discovery. *See e.g.*, *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986); *Devlin v. Kalm*, 2015 WL 6994355, at *1 (6th Cir. 2015). While this case involves two motions for summary judgment, there is still the pre/post discovery dichotomy. In addition, while the motion is couched in terms of qualified immunity, the issues are really focused on the merits of the retaliation claims, not on whether the rights asserted by plaintiff were clearly established. And, both sides present additional evidence not before the trial court and appeals court. Thus, the law of the case does not bar the Court from addressing the merits of this motion.

As set forth above, while the Sixth Circuit concluded that participation in the Warden's Forum was not protected conduct, it also concluded that defendants "conceded" that plaintiff's participation in the Ombudsman's investigation is protected conduct. Defendants' concession is binding and nothing defendants

12

have presented now suggests that this conclusion can or should be altered. The Sixth Circuit also stated that defendants conceded that the false McMurtrie ticket was adverse action. Again, defendants' earlier concession that the McMurtrie ticket is adverse is binding. Alternatively, even if the dismissed ticket is, by itself, too trivial to be considered adverse action, plaintiff has alleged several consequences arising from the retaliation. He alleges false misconduct tickets, threats of physical injuries, loss of his job, loss of "privileges," being called a "rat" which subjects him to risk from other inmates, and loss of his position on the Warden's Forum. While participation in the Warden's Forum was deemed not adverse by the Court of Appeals in this case, as discussed in more detail below, the adverse actions alleged here can be aggregated to support plaintiff's claim.

As such, the primary issue before the Court is whether there is any questions of fact as to whether plaintiff's retaliation claims are supported by any adverse actions. "[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). "[I]t would trivialize the First Amendment to allow plaintiffs to bring First Amendment retaliation claims for any adverse action no matter how minor." *Bell*, 308 F.3d at 603 (internal quotations omitted). "While the adverse action inquiry is ordinarily a question of fact for the jury, some 'adverse actions' are so de minimis that they fail to state a retaliation claim as a matter of law." *Hann v. Michigan*,

2007 WL 894827, at *8 (E.D. Mich. 2007) report and recommendation adopted,

2007 WL 895056 (E.D. Mich. 2007) vacated, 2007 WL 925539 (E.D. Mich. 2007)

and opinion reinstated in part, 2007 WL 1565465 (E.D. Mich. 2007) and report

and recommendation adopted, 2007 WL 1565465 (E.D. Mich. 2007), citing *Bell*,

308 F.3d at 603; and *Thaddeus-X*, 175 F.3d at 398-99; *Wurzelbacher v. Jones-*

*Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012) ("Whether an alleged adverse action

is sufficient to deter a person of ordinary firmness 'is generally a question of fact,'

but when the alleged adverse action is 'inconsequential,' resulting in nothing more

than a 'de minimis injury,' the claim is properly dismissed as a matter of law.")

(Citing *Bell v. Johnson*).

However, some cases observe that even minor misconduct tickets can

support a retaliation claim.  *See Campbell v. Gause*, 2011 WL 825016, 8 (E.D.

Mich. 2011); *Perkins v. McCarthy*, 2013 WL 5329849, at *8 (W.D. Mich. 2013).

There is also an unpublished Sixth Circuit opinion holding that when a misconduct

ticket is dismissed, the plaintiff "ultimately did not suffer any adverse action

because of them." *Jackson v. Hamlin*, 61 Fed. Appx. 131, 132 (2003).  Subsequent

district court cases have reached the same conclusion.  *See e.g.*, *Barry v. Norris*,

2008 WL 4442521 (W.D. Tenn. 2008) ("The filing of a disciplinary write up for a

minor infraction, which was withdrawn before any action was taken on it, is a de

minimis action that does not rise to the level of an adverse action sufficient to

deter a person of ordinary firmness from continuing to engage in protected conduct."); *Porter v. Van Tatenhove*, 2011 U.S. Dist. LEXIS 152988, *28 (W.D. Mich. 2011) ("It is well established that a withdrawn misconduct charge is not an action that would deter a person of ordinary firmness.") (collecting cases).

Plaintiff also asserts, however, that there are additional adverse actions to support the retaliation claim. (Dkt. 78). Plaintiff says that he has alleged and supported with evidence the following as it relates to defendants Condon and Downard: (1) Downard wrote a false misconduct ticket against plaintiff for his cooperation with the prison investigator; (2) the issuance of a false misconduct ticket by Downard was an adverse action; (3) Downard's threat of physical harm and/or additional false misconduct tickets was an adverse action; and (4) Condon's threat of physical harm and/or additional false misconduct tickets was an adverse action. (Dkt. 74, ¶ 58-61). According to plaintiff, each one of these adverse actions, individually, is sufficient to support a First Amendment retaliation claim against Downard and Condon and is well supported in the record. (Dkt. 78, Ex. A, p. 28, lines 19-25; p. 29, line 1; Ex. A, p. 35, lines 2-6; Ex. A, p. 44, lines 17-25; p. 45, lines 1-8); *see also Reynolds-Bey v. Harris-Spicer*, 428 Fed. Appx. 493, 503 (6th Cir. 2011) (stating that adverse actions include "threatening to impose disciplinary sanctions, issuing major misconduct reports that could result in loss of disciplinary credits, and threatening the use of physical force").

15

In reply, defendants contend that the "Sixth Circuit reversed this Court's prior grant of judgment only as to the allegedly retaliatory ticket written by McMurtrie. (Dkt. 35, Pg ID 343-44). Defendants maintain that this is the only adverse action now at issue because the Sixth Circuit did not hold that Downard's ticket or any other actions could constitute an adverse action, and it let this Court's prior judgment stand as to those alleged actions.

In the view of the undersigned, while the Sixth Circuit's opinion focused on the McMurtrie ticket, the order granting summary judgment in favor of all three defendants on plaintiff's retaliation claims was reversed. The Court of Appeals' opinion rather vaguely referred to "false misconduct tickets," but only specifically mentioned the McMurtrie ticket. That is also what the parties focused on in their appellate briefs. The facts pertaining to the Downard ticket and other adverse actions were was not fleshed out very well because plaintiff was pro se during the lower court briefing. And on appeal, the record was fairly limited. Moreover, plaintiff was permitted to file a second amended complaint and that is controlling as to the claims still in play in this case. The second amended complaint certainly articulates all of the alleged retaliation committed by defendants against plaintiff in response to the motion for summary judgment.

Defendants also point out that the misconduct ticket issued by Downard was affirmed and thus assert that any claim of retaliation based on this ticket was

"checkmated."  The checkmate doctrine, which only appears in unpublished Sixth

Circuit decisions, has been called in question by Judge Tarnow, as pointed out by

Magistrate Judge Stafford:

> As noted, the Sixth Circuit has held in unpublished
> opinions that "[a] finding of guilt based upon some
> evidence of a violation of prison rules 'essentially
> checkmates [a] retaliation claim.'" *Burton*, 234 F.3d at
> *2 (6th Cir. 2000) (unpublished) (quoting *Henderson v.
> Baird*, 29 F.3d at 469). However, a court in this district
> disputed the notion that the checkmate doctrine is well
> settled in the Sixth Circuit, and warned against uncritical
> application of the doctrine. "[T]o allow retaliatory
> discipline claims only where prison disciplinary
> proceedings terminated in plaintiff's favor 'would
> unfairly tempt corrections officers to enrobe themselves
> and their colleagues in what would be an absolute shield
> against retaliation claims.'" *Wagner v. Randall*, No. 13-
> 15075, 2014 WL 4843686, at *3 (E.D. Mich. Sept. 29,
> 2014) (Tarnow, J.) (quoting *Woods v. Smith*, 60 F.3d
> 1161, 1164-65 (5th Cir. 1995)).

*Maclin v. Holden*, 2015 WL 4634170, at *5 (E.D. Mich. Aug. 3, 2015) (as adopted

by J. Drain).  As further explained by Judge Stafford, as evidence that the

checkmate doctrine is not absolute, the *Wagner* court cited *Thomas v. Eby*, 481

F.3d 434 (6th Cir. 2007), an opinion that is instructive to the instant case.  In that

case, Thomas alleged that corrections officer Eby had written a major misconduct

ticket against him, alleging that he exposed his genitals, in retaliation for a

grievance Thomas had written against another corrections officer.  *Id*. at 436.  A

hearing officer upheld the ticket, and Thomas's subsequent appeals were

unsuccessful. *Id.* Thomas's complaint alleged First Amendment retaliation, but the defense argued "that because the administrative process concluded that Eby's allegations were not false, Thomas cannot show a retaliatory motive." *Id.* at 441. Nonetheless, the Sixth Circuit held that dismissal of the plaintiff's complaint at the pleading stage was in error because, after discovery, Thomas may have been able to establish that retaliation was a motivating factor for the misconduct ticket. *See Maclin v. Holden*, at *5. Here, plaintiff has proffered evidence of threats by defendants to issue additional misconduct tickets and threats of further physical harm, which sufficiently support the adverse action prong of plaintiff's retaliation claim, creating a genuine issue of material fact. As explained in *Hamilton v. Welton*, 2015 WL 6453850, at *8 (W.D. Mich. 2015), quoting *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original), the relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 Fed. Appx. 529, 542 (6th Cir. 2003) (threat to change drug test results).

Moreover, even if the checkmate doctrine were applicable, the individual incidents suffered by plaintiff are sufficient to constitute adverse action when

18

considered in the aggregate.  *Moore v. Money*, 2014 WL 419598, *8 (S.D. Ohio

2014), reversed on other grounds, 590 Fed.Appx. 562 (6th Cir. 2014), citing

*Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (claims

considered in the aggregate were found to be adverse as a whole); *see also*, *Maclin*

*v. Holden*, 2015 WL 4634170, *9 (E.D. Mich. 2015) ("[E]ven if individual actions

are not individually considered adverse actions, they may be when considered in

the aggregate.").  In this case, the undersigned concludes that plaintiff has

identified several incidents (a false minor misconduct ticket, an allegedly false

misconduct ticket, and threats by officers of physical harm and additional false

misconduct tickets), that, when considered in the aggregate, constitute sufficient

advance action to create a genuine issue of material fact.[1]

C.    Conspiracy

Defendants make no argument whatsoever in their opening brief regarding

the merits of the conspiracy claim.  Thus, summary judgment should be denied on

this basis alone.  *Canfield v. Meyer*, 2014 WL 4662328, at *5 (W.D. Mich. 2014)

(It is well established that a reply brief is not the proper place to raise new

---

[1]  Defendants mention in their opening brief that the burden-shifting framework of Mount
Healthy is applicable on summary judgment. *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007),
citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) and
*Thaddeus-X*, 175 F.3d at 399).  This means that "[a]fter a plaintiff shows that his protected
conduct was a motivating factor in the defendant's actions, the defendant may thwart the
retaliation claim by showing that it would have taken the same action even without the protected
activity." *Id*. at 441-42.  Here, however, defendants did not develop any argument or offer
evidence to support this theory.

arguments or facts), citing *United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009); *see also*, *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held ... that arguments made ... for the first time in a reply brief are waived."). As to defendants' argument that the conspiracy claim fails when the underlying conspiracy claim fails, this argument has no merit, given the foregoing conclusions.

   D.   Exhaustion

   Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Compliance with prison grievance procedures . . . is all that is

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has

21

emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Plaintiff's grievance was rejected at Step I of the grievance process because he grieved "multiple issues" in violation of the Policy Directive.[2]  Defendants argue that plaintiff did not sufficiently exhaust his administrative remedy because he appealed the rejection of his grievance through all three steps of the required grievance process, instead of re-filing single issue grievances.  As set forth in *Burnett v. Howard*,  2010 WL 1286256 (W.D. Mich. 2010):  "[a]s long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." While this is true, however, as explained in *Reeves v. Salisbury*, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012) report and recommendation adopted in pertinent part, rejected on other grounds, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012), "the Court is not required to blindly accept the state's application of the procedural rule."  The Court further explained:

---

[2]  Plaintiff argues that defendants waived this defense by not timely raising it in the answer to the second amended complaint (which was filed late).  Even if plaintiff is correct, given that an examination of the merits of this defense reveals that plaintiff did properly exhaust his administrative remedies, this issue need not be addressed.

The MDOC policy prohibits grievances with "multiple unrelated issues." Not surprisingly, therefore, a review of federal cases addressing prisoner grievances containing multiple issues reveals that a prisoner "properly" exhausts where the multiple issues are related or the grievance really involves one claim and multiple harms. *LaFountain v. Martin,* 334 F. App'x. 738, 741 (6th Cir. June 3, 2009). On the other hand, if the grievance contains two completely unrelated issues, it is not proper. *Rusiecki v. Trombley*, 06–cv–14023, 2007 U.S. LEXIS 99733, at *16 (E.D. Mich. Nov. 30 2007); *Crump v. Caruso*, No. 09–cv–194, 2010 WL 3720068, at *——, 2010 U.S. Dist. LEXIS 97492, at *9 (W.D. Mich. Sept. 17, 2010).  For example, in *Rusiecki v. Trombley*, Magistrate Judge Charles Binder stated that Plaintiff's grievance was properly rejected for containing multiple issues when the grievance contained a complaint regarding legal mail and a completely unrelated complaint about a failed monetary disbursement. *Rusiecki*, 2007 U.S. LEXIS 99733, at *16.  Likewise, a grievance that "addressed not only a claim regarding [the prisoner's] lost property, but also claims regarding arbitrary punishment, deliberate indifference to medical needs, improper assignment to a smoking unit, and arbitrary refusal to allow [the prisoner] to see the quartermaster" was properly rejected for containing multiple unrelated issues. *Crump v. Caruso*, 2010 U.S. Dist. LEXIS 97492, at *9.  However, in *LaFountain*, the Sixth Circuit held that a grievance that contained complaints about a prisoner being accosted in the bathroom and having his cell robbed was not properly rejected for containing multiple issues.  *LaFountain*, 334 Fed. Appx. at 741.  The Sixth Circuit reasoned that the grievance was really one claim of retaliation by an MDOC employee that labeled the prisoner a "snitch and a sexual predator" that resulted in multiple harms: "The hostile action that LaFountain claims to have suffered as a result of being labeled a snitch and a sexual predator, such as being accosted in the bathroom and having his

23

> cell robbed, is merely the harm he suffered as a result of
> the alleged retaliation." *Id*. (citing *Thaddeus–X v.
> Blatter*, 175 F.3d 378, 394 (6th Cir.1999)).

*Id*. at *5. In *Reeves*, the court concluded that the plaintiff's case was more akin to *LaFountain* because the grievance contained allegations of multiple harms stemming from one incident of alleged retaliation. Thus, the plaintiff's claim was deemed to have been exhausted despite the rejection. The undersigned concludes that the instant case is more like *Reeves* and *LaFountain*. Here, plaintiff filed a single grievance against various staff for retaliation based on his participation in the Ombudsman investigation. While there were multiple instances of retaliation alleged, they were all related to the same protected conduct. (Dkt. 75-6, Pg ID 825). Thus, just as in *LaFountain* and *Reeves*, there were merely multiple harms alleged as a result of a single claim of retaliation based on plaintiff's participation in the Ombudsman's investigation.

### 5.   Mental/Emotional Damages

Plaintiff does not make a claim for such damages, asserts that he does not, and thus, it is unclear why defendants are moving for summary judgment on this basis. Plaintiff is entitled to actual damages and has only made claims for actual damages. Simply because no physical injury is alleged does not mean that the only other potential damages must be for mention/emotional damages. As recently explained by the Sixth Circuit:

24

The Sixth Circuit has never squarely addressed in a published opinion whether § 1997e(e) bars claims alleging First Amendment violations that do not result in physical injury. *See Taylor v. United States*, 161 Fed.Appx. 483, 487 (6th Cir. 2005) (declining to address the issue because the prisoner failed to exhaust his administrative remedies). *But see Williams v. Ollis*, 230 F.3d 1361 (6th Cir. 2000) (unpublished table order) (permitting a prisoner to pursue a claim for money damages arising from First Amendment violations). For the following reasons, we are persuaded that deprivations of First Amendment rights are themselves injuries, apart from any mental, emotional, or physical injury that might also arise from the deprivation, and that § 1997e(e) does not bar all relief for injuries to First Amendment rights.

*King v. Zamiara*, 788 F.3d 207 (6th Cir. 2015).  The Court concluded as follows:

Accordingly, we hold that § 1997e(e) does not foreclose claims that allege violations of First Amendment-protected rights as injuries. King's claim alleges a constitutional injury distinct from any mental or emotional injury he might have suffered: He claims that he was placed in a higher security facility for approximately ten months in retaliation for his exercise of his First Amendment rights. R. 1 (Compl. ¶ 50) (Page ID # 8). While at the more secure facility, King suffered infringements on his First Amendment rights because additional restrictions on his movements hindered his attempts to collect affidavits and declarations from other prisoners to assist in the Cain litigation. R. 171 (Trial Tr. I at 98) (Page ID # 1530). ***Because Kings claim is not "for mental or emotional injury," § 1997e(e) does not preclude his claim merely because he does not also claim physical injury***.

*Id*. (emphasis added).  Again, plaintiff makes it clear that he does not seek

25

damages for any mental or emotional injury.  Thus, summary judgment on this basis should be denied and plaintiff's claim that § 1997e(e) of the PLRA is unconstitutional need not be addressed.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 3, 2016                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 3, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov