UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDLE GRIFFIN,

    Plaintiff,

v.

                                Case No. 11-14876

LOUIS CONDON, *et al.*,

                                Hon. John Corbett O'Meara

    Defendants.
_____/

## OPINION AND ORDER

Before the court is Defendants Condon, Downard, and McMurtrie's motion for judgment as a matter of law or for a new trial, which has been fully briefed. For the reasons explained below, Defendants' motion is denied.

## BACKGROUND FACTS

Plaintiff Randle Griffin filed this action against Defendants Louis Condon, Gary McMurtrie, and Joseph Doward, alleging that they violated his First Amendment rights while he was incarcerated at Gus Harrison Correctional Facility in Adrian, Michigan. In 2011, while at Gus Harrison, Plaintiff saw Defendant Condon assault another inmate, Jeffrey Bryant. The assault was investigated by Jessica Zimbleman, an investigator from the Michigan Legislative Corrections Ombudsman's office. In February 2011, Zimbleman interviewed prisoners at Gus

Harrison, including Plaintiff, in an office next door to Condon's. See Vol. 1 TR. at 48-50.

At the time, Plaintiff was a member of the Warden's Forum, which served to address concerns of the prison population. On March 2, 2011, Plaintiff attended a Warden's Forum meeting, which ran late. As a result, Plaintiff was late to his job as a recreational room porter. Plaintiff's start time was 2:30 p.m., but he did not begin his work until sometime after 3 p.m. See Vol. 2 TR at 10-13. Officers McMurtrie and Downard were present when Plaintiff began his work. Id. at 12-13. Plaintiff testified that his tardiness was an "excused absence" because he was at a Warden's Forum meeting.

After Plaintiff finished his assignment, he went to Condon's office to speak to him about mail delivery. Subsequently, Condon called Plaintiff back into his office to let him know that the mail would be delivered as Plaintiff had suggested. In addition, Plaintiff testified that Condon told him that "my statement to the ombudsman was going to come back to bite me in the ass." Id. at 16.

Later that day, Plaintiff learned that fellow prisoner Larry Anthony overheard Condon, McMurtrie, and Downard agreeing to write false misconduct tickets to "get rid" of Plaintiff. Id. at 17-18, 126-28. Another prisoner, Terrance Davis, overheard the same conversation. Vol. 3 TR. at 16-17.

On that same day (March 2, 2011), Downard issued a misconduct ticket against Plaintiff for failing to report to work. Vol. 2 TR. at 20-22. Plaintiff testified that he did not believe the ticket was justified, because he had come to work late as a result of the Warden's Forum meeting. Id.

Plaintiff actually received the ticket the next day, March 3, 2011. When he attempted to report for work, McMurtrie said "you no longer work for us" and that Plaintiff was "laid in," meaning he had to stay in his cell until the ticket was resolved. Id. at 22-23. Plaintiff testified that while he was in his cell that day, "Officer Downard came past my cell, stopped at my door, and told me if I didn't like the ticket that was written on me, do something and they will beat my ass and put me in the hole until I healed up. And then he called me a rat real loud, you know, and then walked off." Id. at 24-26.

On March 4, 2011, Plaintiff received another ticket, written by McMurtrie. McMurtrie wrote a ticket that Plaintiff was "out of place" on March 3 because Plaintiff was not at work. However, McMurtrie had told Plaintiff not to report to work on March 3 because he was "laid in." Id. at 27-28. Plaintiff explained the situation to the officer on duty, who contacted McMurtrie, resulting in the dismissal of the ticket.

Plaintiff testified that as a result of the first misconduct ticket, he lost his job

and other privileges and was removed from the Warden's Forum. At trial, the jury found that each of the Defendants violated Plaintiff's First Amendment rights and conspired to violate Plaintiff's First Amendment rights. The jury awarded Plaintiff a total of $12,500, including punitive damages.

## LAW AND ANALYSIS

### I. Standard of Review

Defendants seek judgment in their favor as a matter of law, or a new trial. In analyzing a motion for judgment as matter of law, the court does not "weigh the evidence, evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." Preferred Properties, Inc. v. Indian River Estates, Inc., 276 F.3d 790, 799 (6th Cir. 2002) (citation omitted). Instead, the court views "the evidence in the light most favorable to the nonmoving party and decide[s] if it was sufficient to raise a genuine issue of material fact for the jury." Id. (citation omitted). Granting a motion for judgment as a matter of law is appropriate "only when there is a complete absence of fact to support the verdict, so that no reasonable juror could have found for the nonmoving party." Id. (citation omitted).

The court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Generally courts have interpreted this language to mean that a new

trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1046 (6th Cir. 1996). "Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial." Tompkin v. Philip Morris USA, Inc., 362 F.3d 882, 891 (6th Cir. 2004).

## II. **First Amendment Retaliation**

Defendants argue that Plaintiff has not set forth a First Amendment retaliation claim as a matter of law, and/or they are entitled to qualified immunity.[1]

As the Sixth Circuit has explained, a "retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Bell v. Johnson, 308 F.3d 594, 602 (6th Cir. 2002). "[A]n official action will be deemed 'adverse' only if it could 'deter a

---

[1] Defendants make no argument regarding the Plaintiff's conspiracy claim.

person of ordinary firmness' from the exercise of the right at stake." Id. at 603. "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact . . . . Thus, unless the claimed retaliatory action is truly "inconsequential," the plaintiff's claim should go to the jury." Id.

Defendants argue that Plaintiff did not show either protected conduct or an adverse action. Both of these arguments were rejected by the Sixth Circuit. Regarding protected conduct, the court stated that "[i]t seems to us elementary that a prisoner retains a First Amendment right to respond to questions posed to him by a prison investigator." Griffin v. Berghuis, 563 F. Appx. 411, 421 (6th Cir. 2014) (citation omitted). "It was similarly clear at the time of the events here that a false misconduct charge was an adverse action." Id.

Viewing the evidence in the light most favorable to Plaintiff, he engaged in protected conduct, suffered an adverse action sufficiently severe to deter an ordinary person from exercising his First Amendment rights, and demonstrated a causal connection. Condon told him that his statement to the ombudsman would come back to "bite him in the ass." Later that day, Plaintiff learned from two other prisoners that Condon, McMurtrie, and Downard conspired to retaliate against him by writing false misconduct tickets. Downard did issue a ticket against Plaintiff for

failing to report to work, when Plaintiff testified that he did report to work, albeit late.  The next day, McMurtrie told Plaintiff not to report to work, then wrote him a ticket for being "out of place."  That same day, Downard threatened to beat Plaintiff's "ass."  As a result of Defendants' campaign, Plaintiff lost his prison job and other privileges.  Defendants are not entitled to qualified immunity because, as the Sixth Circuit recognized, "if Griffin's story is believed, each of the defendant officers should have known better."  Id.

Under the facts of this case, it was the jury's prerogative to assess the credibility of the witnesses and find in favor of Plaintiff.  The court will deny Defendant's motion for judgment as a matter of law.

### III.  Admission of Plaintiff's Exhibit 44

Defendants also argue that they are entitled to a new trial because Plaintiff's Exhibit 44 was improperly admitted.  Exhibit 44 is a report created by Jessica Zimbleman, an investigator from the Michigan Legislative Corrections Ombudsman's office.  In the report, Zimbleman concluded that there was a "pattern of staff misconduct and verbal abuse at the prison" and that officers retaliated against prisoners by writing false tickets. See Docket No. 119, Ex. 1. Defendants contend that the report should have been excluded because it is hearsay, improper character evidence, and unfairly prejudicial.

Plaintiff contends that the report was properly admitted pursuant to Fed. R. Evid. 803(8), which provides an exception to the hearsay rule for certain public records. Pertinent to this case, the rule permits admission of a "record or statement of a public office if . . . it sets out . . . factual findings from a legal authorized investigation" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Id. See generally Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988).

Exhibit 44 is a report of the Michigan Legislative Corrections Ombudsman's office, which was authorized by law. See M.C.L. 4.354 (ombudsman may investigate prisoner complaints). Defendants contend that it is not trustworthy because it is merely a compilation of prisoner complaints. The report was compiled by Zimbleman over the course of two years after receiving dozens of complaints from prisoners. See Vol. 2 TR at 102, 105, 117. When evaluating a report's trustworthiness, the court may consider: (1) the timeliness of the investigation, (2) the special skill or experience of the official, (3) whether a hearing was held; and (4) possible motivation problems. See Advisory Committee Notes to Rule 803(8). Defendants have not demonstrated that Zimbleman's report had these indicia of untrustworthiness. Moreover, Defendants were able to cross-examine Zimbleman regarding the report and her methodology for preparing it,

which allowed the jury to assess the report's credibility.

Defendants also argue that the report was improper "prior acts" or character evidence. See Fed. R. Evid. 404(b). Plaintiff responds, and the court agrees, that the report was admissible under Rule 404(b)(2) to prove the existence of a larger continuing plan, scheme, or conspiracy to retaliate against prisoners by Defendants. See United States v. Passarella, 788 F.2d 377, 384 (6th Cir. 1987); Fed. R. Evid. 404(b)(2) (evidence of prior acts may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Moreover, although the report may have been prejudicial to Defendants' case, it was not unfairly so. See United States v. Bonds, 12 F.3d 540, 567 (6th Cir. 1993) ("Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.") (citation omitted).

The court concludes that Defendants have not demonstrated that a new trial is warranted based upon the admission of Exhibit 44.

## IV. Exclusion of Defendants' Exhibits C and D

Defendants also argue that their Exhibits C and D should have been admitted. Exhibits C and D are memos regarding Plaintiff's removal from the

Warden's Forum for reasons other than his protected conduct. Plaintiff testified regarding this point, however: that he was removed from the Warden's forum at a previous facility and banned from future service until August 18, 2011. Vol. 2 TR at 63-65. Defendants also introduced Exhibits A and F, which provided non-retaliatory reasons for Plaintiff's removal. Given the evidence already in the record, Defendants have not shown that the admission of Exhibits C and D would have made a difference in the outcome of the trial. Accordingly, Defendants have not demonstrated that the exclusion of Exhibits C and D warrants a new trial.

## ORDER

IT IS HEREBY ORDERED that Defendants' motion for judgment as a matter of law or a new trial is DENIED.

s/John Corbett O'Meara<br>United States District Judge

Date: July 14, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, July 14, 2017, using the ECF system.

s/William Barkholz<br>Case Manager